

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUN 29 2012

CLERK, U.S. DISTRICT COURT
By _____
                Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

PAMELA RICHARDSON,                §
                                  §
            Plaintiff,            §
                                  §
VS.                               §    NO. 4:11-CV-359-A
                                  §
WELLS FARGO BANK, N.A., ET AL.,   §
                                  §
            Defendants.           §

MEMORANDUM OPINION
and
ORDER

Now before the court are the motion for summary judgment and

supplemental motion for summary judgment filed in the above

action by defendants, Wells Fargo Bank, N.A. ("Wells Fargo"), and

Federal Home Loan Mortgage Corporation ("Freddie Mac").[1]

Plaintiff, Pamela Richardson,[2] filed a response to defendants'

first motion, to which defendants filed a reply; plaintiff filed

nothing in response to the supplemental motion. Having now

considered all of the parties' filings, the entire summary

judgment record, including defendants' original and supplemental

_____

[1]Defendants filed their first motion for summary judgment on May 3, 2012. Before plaintiff filed her response, she obtained leave of court to file her second amended complaint to add claims and causes of action concerning the foreclosure and eviction from her property. The court subsequently allowed defendants to file a supplemental motion as to the new claims.

[2]At the time of filing the state court petition, plaintiff's then-husband, Grayton Koenig ("Koenig"), was also named as a plaintiff. However, on July 27, 2011, the parties submitted a stipulation of dismissal as to Koenig, and on July 28, 2011, the court signed a final judgment dismissing all claims and causes of action asserted by Koenig in this action.

appendices and the appendix submitted by plaintiff with her

response, as well as applicable legal authorities, the court

concludes that the motions should be granted.

I.

## Plaintiff's Claims

Plaintiff initiated this removed action by the filing on

April 19, 2011, of her original petition in the District Court of

Tarrant County, Texas, 342nd Judicial District, asserting claims

and causes of action related to Wells Fargo's foreclosure of

plaintiff's property and Freddie Mac's attempts to evict her

therefrom.  On April 11, 2012, plaintiff filed a first amended

complaint that was substantially similar to the original state

court petition, asserting claims and causes of action for breach

of contract and anticipatory breach of contract, breach of common

law tort of unreasonable collection efforts, claims under the

Texas Consumer Credit Code/Debt Collection Practices Act

("TDCPA"), Texas Finance Code §§ 392.001-392.404, negligent

misrepresentation, and suit to quiet title and trespass to try

title.  Plaintiff also alleged "malice," requested an accounting,

and sought a declaratory judgment that: plaintiff did not breach

the deed of trust; defendants had no standing, or alternatively,

waived their right, to foreclose; defendants wrongfully attempted

to foreclose on plaintiff's property; Wells Fargo breached the

deed of trust and had no standing to foreclose; and, the lien was
invalid.

On May 31, 2012, plaintiff filed her second amended
complaint ("Complaint").  The Complaint was virtually identical
to the first amended complaint, with the addition of causes of
action for wrongful foreclosure and wrongful eviction.[3]

II.

## The Summary Judgment Motions

Defendants argued for summary judgment on the following
grounds:  all of plaintiff's claims are preempted by the National
Bank Act; plaintiff's breach of contract and anticipatory breach
of contract claims fail because Wells Fargo sent all notices as
required, plaintiff failed to perform her obligations under the
loan documents, plaintiff cannot state a claim based on any
breach by defendants of an alleged duty of good faith, plaintiff
cannot establish her claims based on an alleged unilateral
contract or pursuant to any alleged waiver of right to foreclose,
and her anticipatory breach of contract claim is unsupported by
facts or law.

As to plaintiff's wrongful foreclosure and wrongful eviction

---

[3]In the Complaint plaintiff frequently uses "Wells Fargo" and "defendants" interchangeably in
describing the acts that gave rise to a particular claim or cause of action.  However, it is clear from the
factual allegations in the Complaint that the majority of plaintiff's claims are directed to Wells Fargo,
and that only the wrongful eviction and trespass to try title claims apply to Freddie Mac.  Therefore, the
court's analysis of plaintiff's claims will refer to the proper defendant, regardless of plaintiff's use of the
term "defendants."  The court intends to dismiss all claims brought by plaintiff against both defendants.

claims, defendants argued that plaintiff cannot establish the elements of wrongful foreclosure, and her wrongful eviction claim fails because no evidence shows the foreclosure was wrongful.

Defendants also moved for summary judgment on the grounds that: plaintiff's claim of unreasonable collection efforts fails because defendants did not engage in any egregious or unreasonable collection activity; defendants did not engage in conduct prohibited by the TDCPA; plaintiff cannot show that defendants engaged in any activity as would support a claim of malice; plaintiff's negligent misrepresentation claim fails due to the statute of frauds, the existence of a contract between the parties, and the economic loss rule, as well as due to plaintiff's inability to show detrimental reliance on any alleged misrepresentation; plaintiff's suit to quiet title and trespass to try title claims fail because plaintiff cannot establish the strength of her own title in light of the foreclosure, nor can she show that Freddie Mac's ownership of the property is improper or that the foreclosure was wrongful.

Defendants also argued that plaintiff cannot show that she is entitled to an accounting because it is a remedy, not a cause of action, and her request for declaratory judgment fails as a result of the failure of her other claims.

4

III.

## Undisputed Facts

The following facts are undisputed in the summary judgment record:

On or about December 21, 2006, plaintiff and her then-husband, Grayton Koenig ("Koenig"), executed a deed of trust to secure payment of a promissory note in the amount of $240,950.00. The note and deed of trust secured the refinancing of plaintiff's property located in Grapevine, Tarrant County, Texas. Plaintiff was required to make payments of $2,212.04 on the first of each month. However, due to personal circumstances, plaintiff defaulted on her loan payments. By September 15, 2009, plaintiff had not paid her monthly payments for July, August, and September 2009. Consequently, on September 27, 2009, Wells Fargo sent plaintiff a letter notifying her of the default and informing her of the total amount needed to bring the account current. The letter warned plaintiff that unless she brought the account current by October 27, 2009, Wells Fargo would accelerate the note and pursue remedies permitted in the note and deed of trust.

Plaintiff subsequently applied to Wells Fargo for a loan modification. "Subject to Wells Fargo's initial review of the financial documents Plaintiff submitted," she was approved for a "temporary, trial modification payment plan" under a program

5

known as the Home Affordable Modification Program ("HAMP Plan").

App. in Supp. of Defs.' Mot. for Summ. J. and Br. in Supp.

("Defs.' App.") at 4.  The HAMP Plan contemplated three monthly

trial payments in the amount of $1,868.17, starting on December

1, 2009, and lasting until February 1, 2010.  The October 19,

2009 cover letter included with the HAMP Plan explained that

> [i]f you qualify under the federal government's Home
> Affordable Modification program and comply with the
> terms of the Trial Period Plan, we will modify your
> mortgage loan and you can avoid foreclosure.
>
> . . . .
>
> The monthly trial period payments are based on the
> income information that you previously provided to us.
> They are also our estimate of what your payment will be
> IF we are able to modify your loan under the terms of
> the program.  If your income documentation does not
> support the income amount that you previously provided
> in our discussions, two scenarios can occur:
>
> 1)  Your monthly payment under the Trial Period
> Plan may change
> 2)  You may not qualify for this loan modification
> program.
>
> If you do not qualify for a loan modification, we will
> work with you to explore other options available to
> help you keep your home or ease your transition to a
> new home.

Id. at 58.  Pertinent provisions of the HAMP Plan included the

following:

> D.  The Lender will hold the payments received during
> the Trial Period in a non-interest bearing account
> until they total an amount that is enough to pay
> my oldest delinquent monthly payment on my loan in
> full.  If there is any remaining money after such

6

> payment is applied, such remaining funds will be
> held by the Lender and not posted to my account
> until they total an amount that is enough to pay
> the next oldest delinquent monthly payment in
> full;
>
> E.   When the Lender accepts and posts a payment during
>      the Trial Period it will be without prejudice to,
>      and will not be deemed a waiver of, the
>      acceleration of the loan or foreclosure action and
>      related activities and shall not constitute a cure
>      of my default under the Loan Documents unless such
>      payments are sufficient to completely cure my
>      entire default under the Loan Documents;
>
>      . . . .
>
> G.   I understand that the Plan is not a modification
>      of the Loan Documents and that the Loan Documents
>      will not be modified unless and until (i) I meet
>      all of the conditions required for modification,
>      (ii) I receive a fully executed copy of a
>      Modification Agreement, and (iii) the Modification
>      Effective Date has passed.  I further understand
>      and agree that the Lender will not be obligated or
>      bound to make any modification of the Loan
>      Documents if I fail to meet any one of the
>      requirements under this Plan.

Id. at 63.  Plaintiff submitted payments consistent with the HAMP

Plan; however, the payments failed to cure the delinquency.

Following the three-month trial period, plaintiff continued to

make the same payments as she did under the HAMP Plan.  Although

the payments were not part of the Plan, Wells Fargo applied them

to plaintiff's outstanding balance.

While the HAMP Plan was pending and after plaintiff

submitted the required payments, Wells Fargo continued to

consider other loss mitigation options for plaintiff, but

informed her that the property "would remain in foreclosure

processing until a permanent modification or other permanent loss

mitigation option was finalized."  Id. at 5.

    By letter dated June 3, 2010, Wells Fargo notified plaintiff

that she did not qualify for a permanent HAMP modification, but

added that it would continue to "review [her] loan for

alternative loss mitigation solutions and notify [her] separately

of the results of that review."  Id. at 76.  Wells Fargo also

attempted to contact plaintiff in early June 2010 concerning the

need for updated financial information.  On June 15, 2010,

plaintiff spoke with a Wells Fargo representative and explained

that she was out of the state.  Wells Fargo agreed to allow

plaintiff to submit the documentation upon her return on June 15,

2010; however, on June 16, 2010, it sent plaintiff a letter

informing her that it was unable to offer her a loan modification

because she failed timely to provide Wells Fargo all of the

requested information.  After plaintiff contacted Wells Fargo it

stopped the pending foreclosure proceedings and resumed its

review of loan modification options available to plaintiff.

    On or about August 4, 2010, Wells Fargo sent plaintiff a

letter offering her a "Special Forbearance Plan" ("Forbearance

Plan").  Id. at 82.  The cover letter accompanying the

Forbearance Plan informed plaintiff that her loan was "due for 11

installments, from 10/01/09 through 08/01/10," that plaintiff

would be required to pay the amounts set forth therein and comply

with all terms and conditions, and required her to sign and

return a copy of the Plan with the first payment.  Id.  The

August 4, 2010 letter advised plaintiff that it was "not a waiver

of the accrued or future payments that become due, but a trial

period showing you can make regular monthly payments."  Id.

The "Terms and Conditions" section of the Forbearance Plan

also required that plaintiff "immediately sign[] and return[]" it

to Wells Fargo, and provided in pertinent part:

1.      . . . . The indebtedness of the referenced loan is in
        default and in consideration of extending forbearance
        for a period of time, it is necessary that you indicate
        your understanding and acceptance of the terms of the
        forbearance agreement by immediately signing and
        returning this agreement.

2.      . . . . Upon successful completion of the
        Agreement, your loan will not be contractually
        current.

3.      The lender is under no obligation to enter into
        any further agreement, and this Agreement shall
        not constitute a waiver of the lender's right to
        insist upon strict performance in the future.

4.      All of the provisions of the Note and Security
        Instrument, except as herein provided, shall
        remain in full force and effect.  Any breach of
        any provision of this Agreement or no-compliance
        with this Agreement, shall render the forbearance
        null and void.

Id. at 84.  The Forbearance Plan required plaintiff to make three

payments of $2,209.39 each on August 20, 2010, September 20,

2010, and October 20, 2010, and a fourth payment of $27,333.37 on November 20, 2010. Plaintiff failed to return an executed copy of the Forbearance Plan to Wells Fargo.

Notwithstanding her failure to sign and return the Forbearance Plan, plaintiff made the August 20, 2010 payment, and Wells Fargo suspended the foreclosure sale then scheduled for September 2010. Wells Fargo posted the property for the next available foreclosure date in order to proceed with the foreclosure if plaintiff failed to comply with the remaining terms of the Forbearance Plan. On or about September 8, 2010, Wells Fargo caused its foreclosure counsel to send plaintiff, via certified mail, a notice of acceleration and a notice of substitute trustee sale scheduled for October 5, 2010. Plaintiff later attempted to submit the September 20, 2010, payment, but it was returned for insufficient funds. As a result of plaintiff's failure to comply with the requirements of the Forbearance Plan, on October 5, 2010, the property was sold at a foreclosure sale to Freddie Mac for $247,763.62.

Following the foreclosure sale, plaintiff requested a post-foreclosure loss mitigation review. A representative from the office of Wells Fargo's president contacted plaintiff about her request. On December 30, 2010, plaintiff received notice of an eviction hearing. On January 24, 2011, Wells Fargo sent

10

plaintiff a loan modification agreement, with instructions to

sign and return the agreement and other requirements.  However,

plaintiff failed to sign and return the final loan modification

agreement.  Consequently, the proffered loan modification expired

and Wells Fargo did not rescind the foreclosure sale.

Freddie Mac evicted plaintiff from the property on May 22, 2012.

IV.

## Applicable Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides

that the court shall grant summary judgment on a claim or defense

if there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247

(1986).  The movant bears the initial burden of pointing out to

the court that there is no genuine dispute as to any material

fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986).

The movant can discharge this burden by pointing out the absence

of evidence supporting one or more essential elements of the

nonmoving party's claim, "since a complete failure of proof

concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial."  Id. at 323.

Once the movant has carried its burden under Rule 56(a), the

nonmoving party must identify evidence in the record that creates

11

a genuine dispute as to each of the challenged elements of its case.  Id. at 324.  See also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . .").  If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 597 (1986).

V.

Analysis

A.  National Bank Act

Defendants first argue that all of plaintiff's claims are preempted by the National Bank Act, 12 U.S.C. §§ 21 et seq. ("NBA").  However, none of the cases cited by defendants stand for the proposition that the NBA preempts a plaintiff's state law claims arising out of or related to foreclosure proceedings, as in this case.  Because the court concludes that dismissal of plaintiff's claims is warranted on other grounds, it need not decide the preemption issue.

B.  Breach of Contract/Anticipatory Breach of Contract

Plaintiff alleged a number of acts by Wells Fargo that she

12

contends constituted breach of contract, including that Wells

Fargo: violated section 51.002 of the Texas Property Code and

breached the deed of trust by failing to give plaintiff notice of

its intent to accelerate or notice of plaintiff's right to cure;

breached a unilateral contract formed after plaintiff relied on a

number of representations made by Wells Fargo; waived its right

to accelerate and foreclose; and breached its duty of good faith

and fair dealing imposed under the Uniform Commercial Code

("UCC"), Tex. Bus. & Comm. Code § 3, and the implied duty of good

faith and fair dealing imposed due to the imbalance of bargaining

power between the parties.

### 1.  Plaintiff Failed to Perform

The essential elements of a breach of contract claim under

Texas law are: "(1) the existence of a valid contract; (2)

performance or tendered performance by the plaintiff; (3) breach

of the contract by the defendant; and (4) damages sustained by

the plaintiff as a result of the breach." Smith Intern., Inc. v.

Egle Group, LLC, 490 F.3d 380, 387 (5th Cir. 2007) (citing Valero

Mktg. & Supply Co. v. Kalama Int'l, L.L.C., 51 S.W.3d 345, 351

(Tex. App.--Houston [1st Dist.] 2001, no pet.)).

Wells Fargo argues that plaintiff's breach of contract claim

fails because she failed to perform her obligations under the

note and deed of trust, and thus she cannot establish one of the

13

essential elements of that claim. The summary judgment record

shows that plaintiff "was consistently late on her payments from

the outset of the Loan," and that "[a]s of September 15, 2009,

Plaintiff owed monthly payments for July, August and September

2009." Defs.' App. at 3-4. Although plaintiff participated in

the HAMP Plan, the loan was still delinquent following those

payments. Plaintiff's failure to perform her contractual

obligations warrants summary judgment on her breach of contract

claim on that basis alone.

In her response plaintiff ignored defendants' argument

concerning her failure to perform under the note and deed of

trust, and she failed to controvert defendants' evidence that she

fell behind on her payments and defaulted under the terms of the

note and deed of trust. Rather than address those issues,

plaintiff argues that Wells Fargo waived its right to accelerate

and foreclose "through its actions and failures to act starting

in late 2009 and lasting until the foreclosure sale on the

Property in October 2010." Pl.'s Br. in Supp. of Pl.'s Resp. to

Defs.' Mot. for Summ. J. ("Pl.'s Resp.") at 9. This argument

fails, as discussed below.

2. No Waiver

To prove waiver, plaintiff must show "(1) an existing right,

benefit, or advantage; (2) knowledge, actual or constructive, of

14

its existence; and (3) an actual intent to relinquish the right (which can be inferred from conduct)." G.H. Bass & Co. v. Dalsan Props.--Abilene, 885 S.W.2d 572, 577 (Tex. App.--Dallas 1994, no writ) (internal citations omitted). To prove waiver based on inference, plaintiff has the "onerous" burden to "produce conclusive evidence that the opposite party unequivocably [sic] manifested its intent to no longer assert its claim." Id. (alteration in original)(internal citations and quotation marks omitted).

Plaintiff contends that Wells Fargo waived its right to accelerate and foreclose because it: proceeded with foreclosure even though plaintiff "had not missed a payment under the trial payment plan," Pl.'s Resp. at 11; told plaintiff it would not foreclose as long as she was in the loan modification plan, and she made the first payment of the Forbearance Plan; did not notify plaintiff that her September 2010 payment was returned for insufficient funds; sent her a loan modification agreement in January 2011; and acknowledged that the October 2010 foreclosure sale was due to a "servicer error." Id.

None of the aforementioned actions or omissions can be construed as an unequivocal manifestation by Wells Fargo of an intent to no longer assert its claim. Instead, the summary judgment evidence conclusively shows the opposite: Wells Fargo

15

repeatedly asserted its intent to maintain its right to

accelerate and foreclose on the property.  The note, deed of

trust, HAMP Plan, and Forbearance Plan all expressly disclaim any

intent by Wells Fargo to waive its right to strictly enforce the

terms of the note and deed of trust.  For example, on the subject

of waiver, the note provides:

> (D)  No Waiver By Note Holder
>
> Even if, at a time when I am in default, the Note
> Holder does not require me to pay immediately in full as
> described above, the Note Holder will still have the right
> to do so if I am in default at a later time.

Defs.' App. at 10.  In the deed of trust:

> 12.  Borrower Not Released; Forbearance By Lender
> Not a Waiver. . . . Any forbearance by Lender in
> exercising any right or remedy including, without
> limitation, Lender's acceptance of payments . . . in
> amounts less than the amount then due shall not be a
> waiver of or preclude the exercise of any right or
> remedy.

Id. at 18.  Similarly, the HAMP Plan stated:

> E.  When the Lender accepts and posts a payment during
> the Trial Period it . . . will not be deemed a
> waiver of[] the acceleration of the loan or
> foreclosure action and related activities.

Id. at 63.  And, in the Forbearance Plan, "this Agreement shall

not constitute a waiver of the lender's right to insist upon

strict performance in the future."  Id. at 84.

As demonstrated by all of the above language, Wells Fargo

could not have made any clearer that it had no intention of

waiving any rights it had under the note and deed of trust.

Plaintiff has adduced no evidence to the contrary.

3.     <u>No Breach of Deed of Trust or Texas Property Code</u>

Plaintiff's claim that Wells Fargo breached the deed of trust and Texas Property Code also fails.  Texas Property Code § 51.002 contains two notice provisions.  Section 51.002(b) requires that notice of the foreclosure sale be given at least 21 days before the sale.  Section 51.002(d) requires that the debtor be informed that she is in default and given at least 20 days to cure the default.

Wells Fargo has adduced summary judgment evidence that notice of default was sent to plaintiff on or about September 27, 2009.  The notice informed plaintiff that: her loan was in default, and if she failed to bring the loan current "it will become necessary to accelerate" the note and pursue the remedies provided in the loan documents.  Defs.' App. at 55.  The notice informed plaintiff of the total amount of delinquency of her loan, and informed her of her right to reinstate the note and deed of trust after acceleration.  Evidence of the September 8, 2010, notice of acceleration and notice of sale informing plaintiff of the October 5, 2010 foreclosure sale of her property is likewise in the summary judgment record.

In response, plaintiff argues there is no evidence that the September 27, 2009 notice of default was sent via certified mail;

however, Wells Fargo's representative testified to that fact, and plaintiff has only offered her speculation in opposition. While plaintiff does not dispute receiving the September 8, 2010 notice of acceleration and notice of sale, she argues that Wells Fargo had no right to foreclose because it breached the Forbearance Plan by failing to comply with its representations in the August 4, 2010 letter. Again, however, plaintiff ignored her own non-compliance: her failure to sign and return the Forbearance Plan, by its terms, rendered it "null and void." Defs.' App. at 84.

To the extent plaintiff attempts to base her breach of contract claims on any alleged breach by defendants of the HAMP Plan or the Forbearance Plan, she failed to allege such claims in any of her pleadings. "A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." Cutrera v. Bd. of Supervisors of La. State Univ., 429 F.3d 108, 113 (5th Cir. 2005). Accordingly, plaintiff's claims for breach of the HAMP Plan and the Forbearance Plan are not properly before the court.

4. No Recovery for Anticipatory Breach of Contract

An anticipatory breach of contract "is a positive and unconditional refusal to perform the contract in the future, expressed either before performance is due or after partial

18

performance." <u>Van Polen v. Wisch</u>, 23 S.W.3d 510, 516 (Tex. App.
--Houston [1st Dist.] 2000, pet. denied) (internal citations
omitted).  To establish anticipatory breach of contract requires
plaintiff to prove "(1) an absolute repudiation of the
obligation; (2) a lack of just excuse for the repudiation; and
(3) damage to the nonrepudiating party." <u>Gonzalez v. Denning</u>,
394 F.3d 388, 394 (5th Cir. 2004) (internal citation omitted).

The Complaint does not specify the exact conduct of Wells
Fargo that comprises plaintiff's anticipatory breach of contract
claim.  The court agrees with defendants, however, that plaintiff
has adduced no summary judgment evidence to show she is entitled
to recover on such a claim.

In her response plaintiff describes the following as
evidence by Wells Fargo of "[a]bsolute repudiation:"

- Wells Fargo offered and Plaintiff accepted a trial
  payment plan in October 2009.  Plaintiff made all the
  payments pursuant to the trial payment plan.  According
  to the Plan, if Plaintiff made all the required
  payments: "then the Lender will provide me with a Loan
  Modification Agreement."  Defendants failed to
  permanently modify Plaintiff's loan.

- Wells Fargo offered and Plaintiff accepted a
  forbearance agreement where Plaintiff was to make
  payments of $2,209.39 each month beginning on August
  20, 2010 with a final payment on November 20, 2010.
  The agreement stated [] that "if your loan is in
  foreclosure, we will instruct our foreclosure counsel
  to suspend foreclosure proceedings once the initial
  installment has been received."  It is undisputed that
  Plaintiff made the initial payment.  However, after
  making the September 2010 payment, Defendant foreclosed

in October 2010.

Pl.'s Resp. at 18 (internal record citations omitted).

Plaintiff has mischaracterized the provisions of the HAMP Plan.  The cover letter and HAMP Plan clearly stated that plaintiff had to meet certain requirements to be eligible for a permanent modification.  The summary judgment evidence shows that upon Wells Fargo's review of plaintiff's documentation following the HAMP Plan, it determined she failed to meet those qualifications and informed her of that fact in the June 3, 2010 letter.  And as discussed previously, plaintiff cannot rely on provisions of the Forbearance Plan because she failed to comply with the requirement to sign and return a copy.  Nevertheless, even accepting plaintiff's argument, none of the above allegations could constitute an absolute repudiation of an obligation by Wells Fargo, nor do they show that Wells Fargo positively and unconditionally refused to perform an obligation in the future.[4]

5.  <u>No Breach of the Duty of Good Faith and Fair Dealing</u>

A common-law duty of good faith and fair dealing "is not imposed in every contract but only in special relationships marked by shared trust or an imbalance in bargaining power."

---

[4]Although the Complaint alleged the breach by defendants of an oral unilateral contract, plaintiff expressly abandoned that claim in her response.

FDIC v. Coleman, 795 S.W.2d 706, 708-09 (Tex. 1990).  The
relationship between a mortgagor and mortgagee does not
ordinarily involve a duty of good faith, id. at 709, and
plaintiff has alleged no facts, nor cited to authority, that
would remove her relationship with Wells Fargo from ordinary
consideration.

Plaintiff in the Complaint and the response to the summary
judgment motion also alleged that the note is a negotiable
instrument, which is governed by chapters one and three of the
UCC, Texas Business & Commerce Code §§ 1.304 and 3.  According to
plaintiff, the UCC imposes a duty of good faith and fair dealing
in every contract, and Wells Fargo breached that duty.  Contrary
to plaintiff's assertions, however, "[b]ecause the Deed of Trust
places a lien on real property, it is not governed by the UCC."
Vogel v. Travelers Indem. Co., 966 S.W.2d 748, 753 (Tex. App.
--San Antonio 1998, no pet.) (emphasis in original).

The comments to section three of the UCC also could not be
more clear:  "Article 3 is not meant to apply to contracts for
. . . the sale or lease of real property or similar writings that
may contain a promise to pay money."  Tex. Bus. & Comm. Code §
3.104, Cmt. 2.[5]  Plaintiff has provided the court with no

---

[5]"Although the Official UCC Comments following the [Texas Finance] [C]ode provisions are not law, they are persuasive authority concerning interpretation of the statutory language." Fetter v. Wells Fargo Bank Texas, N.A., 110 S.W.3d 683, 687 (Tex. App.--Houston [14th Dist.] 2003, no pet.).

authority supporting her claim that the UCC applies to this case.

In sum, the court concludes that summary judgment is warranted on plaintiff's breach of contract claim.

C. Wrongful Foreclosure/Wrongful Eviction

To state a claim for wrongful foreclosure, plaintiff must show: "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." Sauceda v. GMAC Mortg. Corp., 268 S.W.3d 135, 139 (Tex. App.-- Corpus Christi 2008, no pet.).

Here, plaintiff's wrongful foreclosure claim is based on the same allegations as her breach of contract claim:  that Wells Fargo had no right to foreclose but did so anyway in breach of the Forbearance Plan, thus demonstrating a defect in foreclosure proceedings.  For the reasons discussed in section B, supra, the court finds this argument unavailing.

Similarly, plaintiff appears to contend that the sales price of the property--$247,763.62--was grossly inadequate in light of the tax appraisal value of $285,500.  Under Texas law a grossly inadequate price would have to be "consideration so far short of the real value of the property as to shock a correct mind, and thereby raise a presumption that fraud attended the purchase." Richardson v. Kent, 47 S.W.2d 420, 425 (Tex. Civ. App.--Dallas

1932, no writ) (citation omitted). "The weight of Texas

authority rejects a determination of gross inadequacy where . . .

property sells for over 60% of fair market value." FDIC v.

Blanton, 918 F.2d 524, 531-32 (5th Cir. 1990) (noting that in

Texas, cases finding gross inadequacy typically involve a selling

price below sixty percent of the property's value).

Here, accepting as true plaintiff's contention that $285,500

was the appraised value of the property, the foreclosure price

was over eighty percent of the property's value. Plaintiff's

wrongful foreclosure claim fails on this basis as a matter of

law.

The sole basis of plaintiff's wrongful eviction claim

against Freddie Mac is that because Wells Fargo had no right to

foreclose, Freddie Mac had no right to declare plaintiff a tenant

at sufferance and had no right to evict her. The court has

already resolved the foreclosure issue favorably to defendants.

Accordingly, summary judgment is warranted on this claim.

D.   Unreasonable Collection Efforts

Unreasonable collection is an intentional tort, the exact

contours of which are not clearly defined. EMC Mortg. Corp. v.

Jones, 252 S.W.3d 857, 868 (Tex. App.--Dallas 2008, no pet.).

Courts have described the tort as collection efforts that amount

to "a course of harassment that was willful, wanton, malicious,

23

and intended to inflict mental anguish and bodily harm." Id.;
Montgomery Ward & Co. v. Brewer, 416 S.W.2d 837, 844-45 (Tex.
Civ. App.--Waco 1967, writ ref'd n.r.e.). The court agrees with
defendants that there is no summary judgment evidence to support
such a claim.

Plaintiff first takes issue with Wells Fargo's use of the
standard described in Jones, cited above. Instead, plaintiff
argues that the correct standard is "efforts which a person of
ordinary prudence in the exercise of ordinary care on his part
would not have exercised under the same or similar
circumstances." Employee Fin. Co. v. Lathram, 363 S.W.2d 899,
901 (Tex. Civ. App.--Fort Worth 1962), rev'd on other grounds,
369 S.W.2d 927 (Tex. 1963). The court does not agree. In a
recent unpublished opinion, the Fifth Circuit affirmed summary
judgment for the defendant on plaintiffs' claim of unreasonable
collection efforts where the district court applied the standard
found in Jones.[6] De Francheschi v. BAC Home Loans Servicing,
L.P., Case No. 11-10860, 2012 WL 1758597, at *3 (5th Cir. May 17,
2012) (unpublished). Thus, the court concludes that Jones sets
the bar by which the court must measure plaintiff's claim of
unreasonable collection efforts. By that standard, plaintiff

---

[6]The court recognizes that the unpublished opinion in De Francheschi v. BAC Home Loans
Servicing, L.P., Case No. 11-10860, 2012 WL 1758597, at *3 (5th Cir. May 17, 2012), is not precedent.
Nevertheless, the court finds the opinions and conclusions therein instructive and persuasive.

falls short.

     In the Complaint plaintiff alleged that the acts

constituting unreasonable collection efforts were that Wells

Fargo: "failed to give Plaintiff a chance to reinstate or cure

the default, and intentionally misled and delayed Plaintiff to

the point of foreclosure," Compl. at 11; assessed late charges,

penalties, and other additional charges; and improperly placed

the property in foreclosure.[7]   The court finds that these

allegations fail to describe "a course of harassment that was

willful, wanton, malicious, and intended to inflict mental

anguish and bodily harm."

     Plaintiff relies on Overholt v. Wells Fargo Bank, N.A., Case

No. 4:10-CV-618, 2011 WL 4862525 (E.D. Tex. Sept. 2, 2011),

report and recommendation adopted by 2011 WL 4862525 (E.D. Tex.

Oct. 13, 2011), to support her contention that Wells Fargo's

actions constitute unreasonable collection efforts.   Plaintiff's

reliance on Overholt is misplaced.   That case was before the

court on a motion to dismiss under Rule 12(b)(6) of the Federal

Rules of Civil Procedure.   The court noted that its decision not

to dismiss the unreasonable collection efforts claim was a "close

call," and indicated that the defendant "should be able to

_____

     [7]Although plaintiff's response to the summary judgment motion provides a "laundry list" of acts
which plaintiff contends constitute unreasonable collection efforts, the acts all fit within the general
allegations of the Complaint.

develop the facts in a motion for summary judgment." Id. at *7.

In contrast, other judges in the Northern District of Texas that have considered the issue, under very similar circumstances, have dismissed such claims brought by plaintiffs in federal court, noting that Texas courts generally do not sustain claims of unreasonable collection efforts when the plaintiff still owes money to the lender. See, e.g., Sanghera v. Wells Fargo Bank, N.A., Case No. 3:10-CV-2414-B, 2012 WL 555155, at *7 (N.D. Tex. Feb. 21, 2012); Steele v. Green Tree Servicing, LLC, Case No. 3:09-CV-0603-D, 2010 WL 3565415, at *6 (N.D. Tex. Sept. 7, 2010); Mitchell v. Chase Home Fin. LLC, Case No. 3:06-CV-2099-K, 2008 WL 623395, at *6 (N.D. Tex. Mar. 4, 2008). The same result is warranted here. Although there may be some disagreement as to the actual amount owed, it cannot be disputed that plaintiff failed to pay all amounts due under the note and deed of trust.

E.   TDCPA

Plaintiff claims that Wells Fargo violated the following provisions of the TDCPA:

- a) Using a deceptive means to collect a debt § 392.304(19) Tex. Fin. Code;

- b) Misrepresenting the character, extent, or amount of a consumer debt, in violation of § 392.304(a)(8) of the Texas Finance Code;

- c) Violating § 392.303(a)(2) of the Tex. Fin. Code; and

- d) Violating § 392.301(a)(8) of the Tex. Fin. Code.

Compl. at 13. Section 392.303(a) prohibits the use of "unfair or unconscionable means" to collect incidental interest, charges, fees, or expenses; section 392.301(a)(8) prohibits debt collectors from "threatening to take an action prohibited by law."

In her response plaintiff claims Wells Fargo violated § 392.301(a)(8) because it foreclosed on her property even though its rights to accelerate and foreclose had not matured due to its failure to comply with the deed of trust and Forbearance Plan. A violation of § 392.301(a)(8) occurs only when a debt collector takes or threatens to take an action prohibited by law. Foreclosure is not an action prohibited by law, and the court has already decided plaintiff's wrongful foreclosure and breach of contract claims concerning the note and deed of trust in favor of Wells Fargo.

Plaintiff contends that Wells Fargo violated §§ 392.303(a)(2) and 392.304(a)(19) by "impos[ing] numerous charges (i.e. late charges, fees, corporate advances, foreclosure fees) to Plaintiff's loan." Pl.'s Resp. at 25. Plaintiff has directed the court to no summary judgment evidence to support these contentions, especially concerning fees or charges that Wells Fargo was not lawfully entitled to impose on plaintiff due to her failure to fulfill her payment obligations.

Finally, plaintiff's allegations concerning § 392.304(a)(8) appear to comprise the same allegations supporting her claims for breach of contract, namely, that plaintiff was not offered a permanent loan modification agreement and that she was prevented from continuing to participate in the Forbearance Plan.  The court has discussed these issues in previous sections of this memorandum opinion and order and sees no need to revisit them here, except to note they have all been resolved against plaintiff.  The court concludes that no genuine issues of material fact exist pertaining to plaintiff's TDCPA claims.

F.   <u>Negligent Misrepresentation</u>

To prevail on her claim of negligent misrepresentation, plaintiff must show: (1) Wells Fargo made a representation in the course of its business, or in a transaction in which it had a pecuniary interest; (2) Wells Fargo supplied "false information" for the guidance of others in their business; (3) Wells Fargo failed to exercise reasonable care or competence in obtaining or communicating the information; and (4) plaintiff justifiably relied on the representations to her detriment.  <u>Fed. Land Bank Ass'n of Tyler v. Sloane</u>, 825 S.W.2d 439, 442 (Tex. 1991).  The type of misrepresentation contemplated is a statement of existing fact, not a promise of future conduct.  <u>BCY Water Supply Corp. v. Residential Inv., Inc.</u>, 170 S.W.3d 596, 603 (Tex. App.--Tyler

28

2005, pet. denied).  "A promise to do or refrain from doing an act in the future is not actionable because it does not concern an existing fact."  Id. (citations omitted).

The alleged misrepresentations, as described in plaintiff's response, relate to promises to provide a loan modification, or the possibility of lowering plaintiff's mortgage payment, or the circumstances under which Wells Fargo would not foreclose or would rescind a foreclosure.  All of these alleged misrepresentations constitute promises of future conduct and cannot form the basis of a negligent misrepresentation claim. The only possible allegations of existing fact are that Wells Fargo agreed to give plaintiff until June 15, 2010, to submit additional documentation for a loan modification, but before that date, it dropped her from the loan modification program for failing to provide the information.  However, plaintiff fails to allege how she relied on these representations to her detriment.[8]

The court has considered defendants' remaining arguments as to plaintiff's negligent misrepresentation claim and concludes that they appear to have merit.  However, the court need not

---

[8]The response states that "[p]laintiff relied on all of the representations to her detriment because Defendants sold Plaintiffs' [sic] property and eventually evicted her from the property." Pl.'s Resp. at 30.  However, the summary judgment evidence shows that following the June 15, 2010 incident Wells Fargo agreed to stop the foreclosure of plaintiff's home scheduled for August 2010, and by letter dated August 4, 2010, offered her the Forbearance Plan.  The eventual foreclosure and eviction were unrelated to any purported reliance by plaintiff on Wells Fargo's representations as to the June 15, 2010 date for providing information.

29

address those arguments here, as it has resolved that claim as described above.

## G.   Suit to Quiet Title and Trespass to Try Title

A suit to quiet title and a trespass to try title action are two distinct causes of action under Texas law.  Fricks v. Hancock, 45 S.W.3d 322, 327 (Tex. App.--Corpus Christi 2001, no pet.).  A trespass to try title action is a statutory cause of action that is "the method of determining title" to real property.  Tex. Prop. Code § 22.001; Martin v. Amerman, 133 S.W.3d 262, 265 (Tex. 2004).  In contrast, a suit to quiet title is an equitable action intended to remove a cloud of title on property.  Fricks, 45 S.W.3d at 327.  Although plaintiff titled this portion of her Complaint as a suit to quiet title and a trespass to try title claim, both the Complaint and her response to the motion for summary judgment address only the latter. Thus, the court will likewise treat plaintiff's claim as one solely for trespass to try title.

To prevail on a trespass to try title action, a plaintiff must prove title to the property by: "(1) proving a regular chain of conveyances from the sovereign, (2) establishing superior title out of a common source, (3) proving title by limitations, or (4) proving title by prior possession coupled with proof that possession was not abandoned."  Caress v. Lira, 330 S.W.3d 363,

364 (Tex. App.--San Antonio 2010, pet. denied) (citations omitted).  Success on a trespass to try title claim requires plaintiff to prove the strength of her title, not merely rely on the weaknesses of Freddie Mac's title.  Fricks, 45 S.W.3d at 327.

Plaintiff's trespass to try title claim arises from the same facts that underlie her breach of contract claims.  Specifically, plaintiff contends that because Wells Fargo failed to comply with the deed of trust and with section 51.002 of the Texas Property Code, it had no right to foreclose on plaintiff's property and the foreclosure sale is void.  Because the sale is void, plaintiff argues that Freddie Mac's purchase of the property is void and it obtained no title, because a purchaser at a foreclosure sale obtains no better title than the trustee can give.

The court has already rejected plaintiff's theory concerning alleged defects in the foreclosure proceeding.  There being no other basis for plaintiff's trespass to try title claim, the court concludes she has failed to establish superior title to the property, and summary judgment is warranted on this claim.

## H.   Declaratory Judgment

The Complaint seeks relief under the Declaratory Judgment Act ("Act"), 28 U.S.C. §§ 2201 & 2202. The Act is a procedural device that creates no substantive rights, but only provides

31

relief when a justiciable controversy exists between the parties. Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-41 (1937). Because the court has concluded that all of plaintiff's claims and causes of action should be dismissed, no justiciable controversy remains between the parties. Accordingly, summary judgment is warranted on plaintiff's request for declaratory judgment.

I.  Accounting and Malice

Plaintiff seeks "an Order for an accounting of all transactions on her mortgage loan." Compl. at 14. "An action for accounting may be a suit in equity, or it may be a particular remedy sought in conjunction with another cause of action." Michael v. Dyke, 41 S.W.3d 746, 754 (Tex. App.--Corpus Christi 2001, no pet.), abrogated on other grounds as recognized by Buck v. Palmer, Case No. 13-09-00192-CV, 2010 WL 5167704, at *12 (Tex. App.--Corpus Christi 2010, pet. filed) (mem. op.) (citations omitted). In her response plaintiff clarifies that she "has not brought a cause of action for an accounting, but seeks an accounting as part of the remedy sought in this matter." Pl.'s Resp. at 35. Because the court has dismissed all of plaintiff's claims and causes of action, she is not entitled to relief in the form of an accounting.

Similarly, under the "Causes of Action" section of the

32

Complaint is a heading titled "Malice."   Compl. at 12.   Although

defendants moved for summary judgment on "malice," plaintiff in

her response clarified that she did not intend to assert malice

as a separate cause of action, but only as a means to recover

exemplary damages.   Because the court has dismissed all of

plaintiff's claims and causes of action, her contentions of

malice are moot.

VI.

Order

Therefore,

The court ORDERS that defendants' motion for summary

judgment and supplemental motion for summary judgment be, and are

hereby, granted, and that all claims and causes of action brought

by plaintiff, Pamela Richardson, against defendants, Wells Fargo

and Freddie Mac, be, and are hereby, dismissed with prejudice.

SIGNED June 29, 2012.

_____
JOHN McBRYDE
United States District Judge

33